73411, 73412. ALPERT v. WICKES COMPANIES, INC.;
and vice versa.
(354 SE2d 674)

BEASLEY, Judge.

Wickes sued Leonard Alpert d/b/a Alpert Imports for conversion. It alleged that Wickes had purchased $30,200 worth of dining tables and chairs from KFK Industrial Company, Ltd., in Taipei, Taiwan; that KFK had shipped the furniture to the port of Los Angeles; that the furniture was picked up at Los Angeles harbor by Giant Transportation, Inc., and shipped to Department Store Consolidators in Commerce, California; that Department Store Consolidators erroneously shipped the furniture to F. W. Myers & Company where it was mixed in with a shipment headed for Leonard Alpert of Alpert Imports in Savannah; that after being informed of the error Alpert refused to deliver the furniture to Wickes or to pay Wickes the reasonable value of the property; and that Alpert converted the property to his own use. Wickes demanded $30,200 with interest and shipping costs or return of the property.

The response was that Alpert had no idea what had happened in Taiwan or between Wickes and other parties; that he had purchased certain items from the named parties but had been unable to identify anything which had not been paid for; that his warehouse had been infested by termites and he was unable to get there to identify his merchandise and see if any of the allegations were correct; and that he had no objection to delivering property if it was shown to belong to someone else and that party was willing to pay the removal expenses.

Wickes amended the complaint to allege that defendant wrongfully, wilfully, intentionally, and in bad faith refused to pay the value of the furniture, that the furniture had greatly diminished in value as a result of apparent termite infestation and market place fluctuation, and that defendant had been stubbornly litigious. Punitive damages

and necessary attorney fees were added damages, and solely a money judgment was sought.

Defendant then amended his answer and counterclaimed alleging that there was no such business known as Leonard Alpert d/b/a Alpert Imports; that plaintiff had been unreasonable in the situation and had filed suit in an attempt to cause him attorney fees and other costs; that if in fact, he had been storing goods for plaintiff, storage charges were due; that plaintiff had been stubbornly litigious and acting in bad faith in filing suit; and that Alpert was in intensive care at a South Carolina hospital and was thus unable to personally meet to try to clarify the situation. Defendant demanded that the complaint be dismissed and that he be awarded $100,000 for plaintiff's bad faith and stubborn litigiousness as well as attorney fees. A later amendment reflected Alpert's death.

Wickes then sought and obtained a temporary restraining order to prevent Mrs. Alpert, a South Carolina resident, from selling the furniture to satisfy estate costs. It was extended and later expanded into an interlocutory injunction.

In the meantime, Wickes amended its complaint to add Mrs. Alpert d/b/a Alpert Imports as a party defendant and moved for summary judgment, arguing that its ownership of the tables and chairs and defendants' wrongful dominion of the property was undisputed. Summary judgment was granted, the court having concluded that Wickes "[won] the test of title" and that "Alpert Imports' purchase of the goods in good faith [did] not change this result." The court deemed admitted certain of plaintiff's requests for admissions of fact because defendants' response was not timely and, as a result, rejected defendants' contention that Wickes had sued the wrong entity, i.e., individuals rather than the corporation. The court awarded plaintiff the furniture, determining that under OCGA § 44-12-151 Wickes was not entitled to monetary damages as it had made no election of remedies or showing of value of the property, the amount of damages, or the value of the property's hire. Plaintiff moved for reconsideration and amendment of the judgment to reflect that it did make an election of remedies and to award the money damages prayed for including attorney fees. The next day defendants filed a notice of appeal. On the third day, Mrs. Alpert d/b/a Alpert Imports and on behalf of her deceased husband filed a motion to withdraw or amend the admissions which the trial court had relied upon. At the same time she also filed cross-motion for reconsideration of the grant of summary judgment to Wickes. The trial court denied Wickes' motion on the ground that it lost jurisdiction by defendants' filing of a notice of appeal from the judgment. It did not rule on defendants' motions.

Defendants' appeal from the grant of summary judgment to Wickes complaining that the court erred in deeming as admitted the

matters in the request for admissions, finding personal jurisdiction of Mrs. Alpert, entering judgment against Mr. Alpert individually, and finding that plaintiff had title to the goods in question. Wickes' cross-appeal is from the denial of its motion for reconsideration and amendment of judgment.

1. We first address whether Wickes held title to the goods as a matter of law. In opposition to this proposition, appellants argue that their answers, responses to interrogatories, and Mrs. Alpert's affidavit create a material issue of fact with regard to title. They further maintain that *they* have established a strong prima facie claim of title under OCGA §§ 11-7-501 and 11-7-502 by the existence of a bill of lading and warehouse receipts for the goods.

Plaintiffs' complaint is for conversion. OCGA § 44-12-150. "In order to prevail, where title is claimed, plaintiff must present proof of legal rather than equitable title. [Cits.] In order to present a cause of action for conversion an act of dominion over the personal property of another inconsistent with his rights or by an unauthorized appropriation must be shown. [Cit.]" *Kornegay v. Thompson,* 157 Ga. App. 558, 559 (2)-560 (278 SE2d 140) (1981). See also *McDaniel v. White,* 140 Ga. App. 118 (230 SE2d 500) (1976).

In support of the motion for summary judgment, Wickes submitted the affidavit of its distribution manager which reiterated the path of the furniture as outlined in the complaint and stated that the manager had repeatedly contacted Mr. Alpert in unsuccessful attempts to have the furniture returned. The affidavit also referred to an appended copy of an invoice for 100 tables and 400 chairs at a cost of $30,200 and a letter of credit for the principal amount for the benefit of KFK Industrial Company, Ltd. Wickes also submitted affidavits of officers from the intermediary companies echoing the chain of delivery to Alpert and shipping documents showing the delivery. In response, defendants submitted shipping documents, copies of bills of lading and warehouse receipts, Mrs. Alpert's affidavit in which she denied the court's jurisdiction over her, averred that the furniture was shipped to a warehouse controlled by Alpert Imports and Len Alpert Associates, both corporations and not individual proprietorships, that her husband had not individually paid for and taken control or possession of the goods, that the furniture was paid for by Alpert Imports, Inc. under the belief that they were items that were ordered by the company, that they relied on the bills of lading and warehouse receipts and tendered payments in accordance therewith, that the goods are similar in nature to those regularly dealt in by Alpert Imports and from a supplier and warehouse that the company regularly dealt with, and that the company had no notice prior to payment or the receipt of the bills of lading and warehouse receipts that any other party claimed any interest in or title to the goods.

The critical question of title and therefore right to the goods was in dispute. The trial court itself characterized the presentation of the evidence as a "test of title." Here, both parties presented documents indicating title to the goods and payment for the goods. Assuming *arguendo* that the furniture in the Alpert's warehouse was indeed, piece for piece, that identified in Wickes' paid invoice, the invoice in and of itself would not pass title to the goods to Wickes as a matter of law. OCGA § 11-2-401. "The cardinal rule of the summary judgment procedure is that the court can neither resolve the facts nor reconcile the issues, but only look to ascertain if there is a material issue of fact. The evidence in this case is in conflict, and thus the trial court erred in granting summary judgment for [Wickes]. [Cits.]" *Foskey v. Intl. Realty Sales & Exchanges*, 180 Ga. App. 858, 859 (350 SE2d 841) (1986).

2. Because summary judgment was not warranted since the issue of title was not foreclosed as a matter of law, we need not address appellants' claims that the trial court erred in deeming admitted against Mrs. Alpert the subject request for admissions since she was not a party to the action at that time and that it also erred in considering the requests as admitted against Mr. Alpert since defendants were under the impression that the court had entered and periodically continued a protective order temporarily suspending discovery due to Mr. Alpert's incapacitating illness. The case remaining open, the defendants' motions which were filed *after* their notice of appeal are no longer moot and resume pendency before the trial court for its ruling. "Where there is no final ruling upon an issue by the trial court, there is nothing for the appellate court to pass upon [cit.], for this court is a court for the correction of errors made in the trial court. [Cit.]" *Blakely & Son v. Humphreys*, 148 Ga. App. 281, 283 (1) (250 SE2d 826) (1978).

3. In addition, we cannot now rule on appellants' contentions that there was no personal jurisdiction over Mrs. Alpert so as to render her a party to the suit and that Mr. Alpert was shielded by a corporate entity and not subject to individual liability. The reason is that Wickes has not proved entitlement to judgment as a matter of law, regardless of who the proper defendant is and whether the court has jurisdiction over it, him, and/or her.

4. The cross-appeal is dismissed because the issue raised therein is rendered moot by our decision in Division 1. We thus do not reach the jurisdictional problems in regard to the cross-appeal arising from cross-appellant's filing of the notice of cross-appeal within thirty days of the court's order on its motion for reconsideration and amendment of judgment but well past the permitted time for filing a notice of appeal from the order granting summary judgment. See *Becker v. Fairman*, 167 Ga. App. 708 (307 SE2d 520) (1983).

*Judgment reversed in case no. 73411. Appeal dismissed in case no. 73412. Deen, P. J., and Benham, J., concur.*

DECIDED MARCH 6, 1987.

*Barnard M. Portman,* for appellant.
*Thomas A. Withers, Wendy W. Williamson,* for appellee.